UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
                                )
TANYA M. JOHNSON, MD,           )
        Plaintiff,              )
                                )
             v.                 )   Civ. No. 1:15cv820
                                )
ROBERT SHIELDS INTERIORS, INC., )
        Defendant.              )
                                )
```

## MEMORANDUM OPINION

THIS MATTER came before the Court on defendant's failure to retain new counsel and note its appearance within 14 days as ordered by the Court on November 4, 2015, defendant's failure to attend the final pretrial conference on December 17, 2015, defendant's failure to appear at the Show Cause hearing on December 18, 2015, and plaintiff's Motion for Sanctions. (Dkts. 25, 33-35). Following the hearing on plaintiff's Motion for Sanctions, the undersigned Magistrate Judge took the matter under advisement to issue this Memorandum Opinion.[1]

## I. PROCEDURAL HISTORY

Plaintiff Tanya M. Johnson filed a Complaint in this action on June 26, 2015, claiming breach of contract, violation of the Virginia Consumer Protection Act of 1977 ("VCPA"), Va. Code Ann.

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and the parties' Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Dkts. 16 and 17), the undersigned Magistrate Judge has jurisdiction over all proceedings in this case.

§§ 59.1-196 et seq., and trespass. (Dkt. 1.) Plaintiff alleges that defendant Robert Shields Interiors, Inc. did not perform in accordance with the parties' September 2014 agreement for defendant to provide professional interior design, space planning, and decorating services for plaintiff's home. (Dkt. 1 at ¶¶ 7-10.) Specifically, plaintiff alleges that defendant did not meet deadlines, made unauthorized charges, made purchases in violation of the VCPA, and entered onto plaintiff's property without permission. (Dkt. 1 at ¶¶ 10-14.) On August 5, 2015, defendant filed an Answer to the Complaint and a Counterclaim seeking outstanding payments allegedly owed to defendant pursuant to the agreement between the parties. (Dkts. 4 and 5.)

That same day, the Honorable Anthony J. Trenga issued a Scheduling Order setting the initial pretrial conference for August 26, 2015 and the final pretrial conference for December 17, 2015. (Dkt. 6.) On August 19, 2015, the parties filed a Rule 26(f) Joint Proposed Discovery Plan, which was adopted by the Court's Rule 16(b) Scheduling Order. (Dkts. 8 and 9.) Plaintiff filed an Answer to defendant's Counterclaim on August 25, 2015, and discovery proceeded. (Dkt. 11.) The following day, plaintiff served defendant with plaintiff's First Request for Production of Documents and First Interrogatories. (Dkt. 13.)

Shortly thereafter, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties filed a

Consent to the Exercise of Jurisdiction by a United States Magistrate Judge. (Dkt. 16.) On September 3, 2015, Judge Trenga ordered that the case be reassigned to the undersigned Magistrate Judge to conduct any and all proceedings in the case, including trial, ordering the entry of final judgment, and all post-judgment proceedings. (Dkt. 17.)

On November 4, 2015, defendant filed a Consent Motion to Withdraw Appearance, asking the Court to permit counsel for defendant to withdraw from representation in the case. (Dkt. 24.) That same day, the Court granted the motion and further ordered that defendant retain new counsel and note its appearance within 14 days. (Dkt. 25.)

In accordance with Federal Rules of Civil Procedure 33 and 34, defendant's responses to plaintiff's First Request for Production of Documents and First Interrogatories were due on September 25, 2015. Thereafter, defendant requested until October 8, 2015, to respond to the discovery requests, to which plaintiff consented. (Dkt. 27-1 at 2.) However, without any excuse or further extension of time granted by plaintiff, defendant failed to respond. As such, plaintiff filed a Motion to Compel Discovery on November 13, 2015. (Dkt. 27.) That motion came before the Court for hearing on December 4, 2015. Defendant filed no response to the motion and did not appear at the hearing. (Dkt. 31.) The Court thereafter granted plaintiff's

3

Motion to Compel. (Dkt. 32.)

At the December 4, 2015 hearing, it further came to the Court's attention that defendant had not retained new counsel as required by the Court's Order of November 4, 2015. The Court thus issued a Rule to Show Cause, ordering defendant to appear on Friday, December 18, 2015 to show cause why it should not be held in contempt for failure to retain counsel. (Dkt. 33.) Defendant then did not appear for the final pretrial conference on December 17, 2015, nor did defendant appear at the Show Cause hearing the following day. (Dkts. 33-34.)

Pursuant to Local Civil Rule 37(C) and the Court's December 4, 2015 Order granting plaintiff's Motion to Compel Discovery, defendant's responses to plaintiff's First Request for Production of Documents and First Interrogatories were due by December 15, 2015. Defendant again failed to comply. (Dkt. 35-1 at 4.) Consequently, on December 23, 2015, plaintiff filed a Motion for Sanctions. (Dkt. 35.) That motion came before the Court for hearing on January 8, 2016. Defendant filed no response to the motion and did not appear at the hearing. (Dkt. 37.) The undersigned thus took the matter under advisement.

## II. ANALYSIS

### A. Default Judgment on Plaintiff's Complaint

Federal Rule of Civil Procedure 37(b)(2)(A) permits the Court to order sanctions against a party for failure to obey a

4

discovery order. Such an order may include rendering default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(vi). Similarly, Rule 16(f)(1) permits the Court—on motion or on its own—to issue any just order if a party or its attorney fails to appear at a scheduling or other pretrial conference or fails to obey a scheduling order or other pretrial order. See Fed. R. Civ. P. 16(f)(1)(A), (C). In such a case, orders permitted by the Court include those authorized by Rule 37(b)(2)(A)(ii)-(vii). See Fed. R. Civ. P. 16(f)(1).

In the instant case, the undersigned finds that defendant has (1) failed to retain counsel as required by the Court's Order of November 4, 2015, (2) failed to appear at the final pretrial conference on December 17, 2015, (3) failed to appear at the Show Cause hearing on December 18, 2015 and otherwise failed to respond to the Court's Rule to Show Cause, (4) failed to respond to plaintiff's First Request for Production of Documents and First Interrogatories, (5) failed to respond to plaintiff's Motion to Compel Discovery and failed to appear at the hearing on that motion, (6) failed to comply with the Court's Order granting plaintiff's Motion to Compel Discovery, and (7) failed to respond to plaintiff's Motion for Sanctions and failed to appear at the hearing on that motion. (Dkts. 6, 25, 27, 31-35, and 37.)

In light of defendant's numerous failures to comply with

5

the orders of this Court, default judgment will be entered against defendant as to plaintiff's Complaint.

When determining sanctions under Rule 37(b), courts in this Circuit apply a four-part test: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998) (citing Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503-05 (4th Cir. 1977)).

Here, in light of those four factors, default judgment is the most appropriate sanction. First, defendant has on numerous occasions failed to appear in court when required, failed to respond to plaintiff's discovery requests as required, and failed to comply with the orders of this Court. Defendant's failure to retain new counsel, as ordered by this Court, is particularly troublesome given that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-02 (1993). Thus the undersigned finds that defendant has acted in bad faith.

Second, defendant's noncompliance has prejudiced plaintiff by delaying the prosecution of this case and forcing plaintiff

6

to incur the additional expense of filing a Motion to Compel
Discovery and a Motion for Sanctions. Additionally, plaintiff's
time was wasted by appearing for the final pretrial conference
and the Show Cause hearing, both of which defendant failed to
attend. Furthermore, defendant's failure to retain new counsel
has left plaintiff unable to contact defendant and unable to
proceed in any manner with this litigation. Thus defendant's
conduct has clearly prejudiced plaintiff.

Third, there is a clear need for this Court to deter the
sort of noncompliance engaged in by defendant. Defendant has
frequently flouted the authority of this Court by failing to
obey the Court's express orders to retain new counsel, to appear
at the final pretrial conference, to appear at the Show Cause
hearing, and to respond to plaintiff's discovery requests.
Defendant has similarly ignored its obligations as a party to
this litigation in failing for months now to respond to
plaintiff's discovery requests—despite an extension, a Motion to
Compel Discovery, and an Order granting that Motion—as well as
failing to respond to or appear at the hearings for the Motion
to Compel Discovery and the Motion for Sanctions. Therefore,
sanctions are necessary to deter this type of conduct in the
future and to teach defendant that obeying Court orders and
complying with its obligations as a party to a lawsuit are not
optional.

Fourth, in light of defendant's extensive noncompliance in this case, less drastic sanctions are not likely to be effective. This Court has twice warned defendant that failure to comply with the orders of the Court may result in default or summary judgment being entered against defendant. (Dkts. 32 and 33.) Nonetheless, defendant has taken no action to comply with these Orders or to otherwise participate in this litigation. Furthermore, plaintiff's Motion for Sanctions, which asks for default judgment against defendant and for an award of reasonable attorneys' fees, has similarly elicited no response from defendant. (Dkts. 35 and 37.) Consequently, the undersigned concludes that less drastic sanctions would not be effective.

## B. Dismissal of Defendant's Counterclaim

Federal Rule of Civil Procedure 41(b) provides that an action may be dismissed "[i]f the plaintiff fails to prosecute or to comply with . . . a court order."  Fed. R. Civ. P. 41(b). "A district court may dismiss an action for lack of prosecution, either upon motion by a defendant pursuant to Federal Rule of Civil Procedure 41(b) or on its own motion." McCargo v. Hedrick, 545 F.2d 393, 396 (4th Cir. 1976).  In addition to the authorization provided by Rule 41(b), a district court retains an "inherent power" to dismiss for failure to prosecute. Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962).

In light of defendant's numerous failures to comply with

the orders of this Court, as detailed above, defendant's
Counterclaim will be dismissed with prejudice.

In this Circuit, four factors must be examined to determine
whether the harsh sanction of dismissal with prejudice is
required.  Chandler Leasing Corp. v. Lopez, 669 F.2d 919, 920
(4th Cir. 1982).  The Court must consider (1) the degree of
personal responsibility of the plaintiff, (2) the amount of
prejudice caused the defendant, (3) the existence of a drawn out
history of deliberately proceeding in a dilatory fashion, and
(4) the existence of a sanction less drastic than dismissal.
Id.[2]

Here, the responsibility for these failures rests with
defendant Robert Shields Interiors, Inc. Per the Court's
November 4, 2015 Order, defendant was responsible for retaining
new counsel within 14 days. Because defendant did not comply
with that Order, the responsibility to appear at the final
pretrial conference, the responsibility to appear at the Show
Cause hearing and respond to the Rule to Show Cause, and the
responsibility to respond to plaintiff Tanya M. Johnson's
discovery requests following the Court's Order granting the
Motion to Compel Discovery all rested with defendant. Therefore,
although the initial failure to timely respond to plaintiff's

---

[2] The Court notes that, in considering these factors as to defendant's
Counterclaim, defendant Robert Shields Interiors, Inc. as counter-claimant
assumes the role of plaintiff and plaintiff Tanya M. Johnson as counter-
defendant assumes the role of defendant.

discovery requests may be attributed to defendant's previous counsel, all failures following the previous counsel's withdrawal lie with defendant.

Furthermore, as explained above, defendant has prejudiced plaintiff by delaying this case, forcing plaintiff to incur the expense of filing additional motions, wasting plaintiff's time by not appearing for the final pretrial conference and the Show Cause hearing, and preventing plaintiff from contacting defendant and proceeding with this litigation. Additionally, the long list of defendant's failures to comply with Court orders and its obligations as a party to this litigation demonstrates a history of proceeding in a dilatory fashion. Finally, less drastic sanctions will not be effective in light of defendant's disregard for both the warnings of this Court and plaintiff's Motion for Sanctions.

## III. DEFAULT JUDGMENT

### A. Findings of Fact

Upon full review of the pleadings and the documents submitted in proof of damages, the undersigned makes the following findings of fact.[3]

---

[3] The record before the Court includes the Complaint ("Compl.") (Dkt. 1), the Brief in Support of Plaintiff's Requested Damages ("Br. Supp. Dams.") (Dkt. 38), the Tanya Johnson Declaration ("Johnson Decl.") (Dkt. 39), the Declaration of Brian L. Behmer in Support of Plaintiffs' [sic] Proof of Damages ("Behmer Decl.") (Dkt. 40), the Declaration of Arthur House in Support of Plaintiff's Proof of Damages ("House Decl.") (Dkt. 41), Plaintiff's Supplement to Tanya M. Johnson Declaration Exhibits ("Pl. Supp. Exs.") (Dkt. 43), and all attachments and exhibits submitted with those

Plaintiff Tanya M. Johnson, MD is an adult resident of McLean, Virginia. (Compl. ¶ 1.) Defendant Robert Shields Interiors, Inc. is a Maryland corporation with its principal office in Gaithersburg, Maryland. (Id. at ¶ 2.) Defendant regularly conducts business in Virginia and the District of Columbia. (Id. at ¶ 3.)

Plaintiff hired defendant in September 2014 to perform professional interior design, space planning, and decorating services, including purchasing furniture, for her home in McLean, Virginia. (Id. at ¶ 7; Johnson Decl. ¶ 3.) Defendant's principal and agent Robert Shields told plaintiff that defendant would have the project done, or nearly done, by Thanksgiving and the holiday season of 2014. (Compl. ¶ 8; Johnson Decl. ¶ 6.) Plaintiff then executed a Letter of Agreement ("the Agreement") with defendant effective September 18, 2014 and paid defendant a $10,000 non-refundable retainer. (Compl. ¶¶ 8-9, Ex. 1; Johnson Decl. ¶ 6, Ex. B.)

Over the next several months, however, defendant did not perform as agreed. Defendant was slow to start and unresponsive, Mr. Shields was unavailable for large chunks of time, and the project was well behind schedule when the 2014 holiday season arrived. (Compl. ¶ 10; Johnson Decl. ¶ 7.) As a result, plaintiff and her many visiting family and guests spent the

---

filings.

holidays in plaintiff's home with most of the rooms unfurnished – there was no dining room table, no breakfast table, and no beds in any room. (Compl. ¶ 10; Johnson Decl. ¶ 7.)

Furthermore, under the Agreement, defendant was to help procure furnishings for and design the majority of plaintiff's home. (Johnson Decl. ¶ 8, Ex. B) The Agreement provided that defendant would earn an hourly fee for these services, and defendant was entitled to a ten percent (10%) markup on shipping and related services, but the Agreement did not provide for any other markups, commissions, or fees. (Id.) The agreed budget was $250,000.00. (Id. at ¶ 8.) From September 2014 to February 2015, plaintiff then spent a total of $256,843.00 on the project. (Id. at ¶ 10.) Notwithstanding these expenditures, though, many of the rooms remain unfurnished. (Id.)

Moreover, several of the items plaintiff paid for were either used, damaged, not the item that was ordered, or never delivered. (Johnson Decl. ¶¶ 10-11; Compl. ¶ 10.) Plaintiff was charged for but never received a Sutton Place king bed, a dressing mirror, and an Idaho side chest. (Johnson Decl. ¶ 11, Exs. D, G, H.) Plaintiff received and was charged for a foyer cabinet that was supposed to be new, but the cabinet delivered was clearly used, which defendant acknowledged, and it had a damaged drawer. (Id. at ¶ 11, Ex. E.) Similarly, plaintiff received and was charged for a coffee table that was delivered

12

in damaged condition, and which plaintiff had to repair at her own expense. (Id. at ¶ 11, Ex. J.) In addition, plaintiff received and was charged for a dining room table that was black instead of brown (thus it does not match the rest of the dining room furnishings) and was damaged with an indented scratch. (Id. at ¶ 11, Ex. C.) Plaintiff also received and was charged for dining room chairs, but although defendant agreed the price would include reupholstering the end chairs, those chairs were never reupholstered. (Id. at ¶ 11, Ex. I.) Finally, plaintiff received and was charged for two lounge chairs that she never approved, but which defendant left in her home and refused to remove. (Id. at ¶ 11, Ex. F.)

Additionally, it was agreed that defendant's fees for its design and procurement services would be $18,750.00. (Id. at ¶ 12.) However, defendant ultimately charged plaintiff $32,175.00. (Id. at ¶ 12, Ex. K.)

Furthermore, plaintiff believes defendant's shipping fees to be excessive, and defendant did not attempt to consolidate shipments. (Johnson Decl. ¶ 10; Compl. ¶ 10.) Defendant procured a floor sample sofa for plaintiff from a showroom in Georgetown and charged plaintiff $407.00 for shipping, freight, and handling and $235.00 for local delivery to plaintiff's McLean, Virginia home. (Johnson Decl. ¶ 13, Ex. L.) Similarly, defendant charged shipping of $863.00 and local delivery of $195.00 for a

13

living room console. (Id. at ¶ 15, Ex. N.) Relating to a
chandelier, defendant charged plaintiff (without her prior
authorization) $1,270.00 for rewiring, $665.00 for shipping,
freight, and handling, and $1,375.00 for local delivery and
installation by an electrician. (Id. at ¶ 14, Ex. M.)
Additionally, defendant represented at the outset that it had
access to a local warehouse to hold items so that they could be
delivered in a consolidated delivery. (Id. at ¶ 16.) However,
the above deliveries were all made separately, even though they
were made within days of February 4, 2015. (Id.)

Defendant also charged unauthorized and undisclosed markups
on the items delivered and/or received unauthorized rebates or
commissions on those purchases. (Johnson Decl. ¶¶ 10, 17; Compl.
¶ 10.) Under the Agreement, defendant was to provide its
services for an hourly fee, including procurement services to be
rendered. (Johnson Decl. ¶¶ 8, 17, Ex. B.) The Agreement further
authorized a ten percent markup on shipping and related services
but did not provide for any other markups, commissions, or fees.
(Id.) Defendant never provided any receipts, vendor invoices or
purchase orders to plaintiff that showed commissions or rebates
it was receiving from the vendors, and defendant refused to
provide proof of the furniture charges and shipping costs when
asked by plaintiff's counsel. (Id. at ¶ 17.) In discovery,
however, plaintiff learned that defendant had undisclosed rebate

14

and commission arrangements with its vendors and was secretly
marking up most of the furniture items sourced for plaintiff by
anywhere from 35 to 100 percent. (Id.) For example, defendant
charged plaintiff $4,800.00 for a chaise lounge that only cost
defendant $2,481.00, and $11,000.00 for a breakfast table that
only cost defendant $5,999.40, which equates to markups of 93
percent and 83 percent respectively. (Id. at ¶ 18, Exs. P-Q.)

Finally, defendant's principal and agent Robert Shields,
along with a friend named James, entered plaintiff's home
without authorization on several occasions. (Johnson Decl. ¶ 19;
Compl. ¶¶ 12, 32.) Although defendant sent various emails, text
messages, and phone calls to Mr. Shields and defendant stating
that no one was authorized to enter her home without her advance
approval, these instructions were disregarded. (Johnson Decl. ¶
19; Compl. ¶¶ 31-32.) These instances unsettled plaintiff and
made her concerned for her safety. (Johnson Decl. ¶ 19; Compl. ¶
12.) Most notably, in late April 2015 plaintiff was upstairs in
her bedroom, alone and in her bathrobe having just gotten out of
her morning shower. (Johnson Decl. ¶ 20.) Plaintiff heard what
sounded like men in her home, which she immediately thought was
some type of home invasion as she had not received any advance
notice that anyone would need to come to her home. (Id.)
Plaintiff yelled down that she would call the police, and Mr.
Shields and another man identified themselves. (Id.) Plaintiff

was extremely shaken up by the incident and other similar instances, which have caused her lingering anxiety, aggravation, and emotional distress. (Id.)

## B. Evaluation of Plaintiff's Complaint

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted.  Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim.  GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate plaintiff's claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

### 1. Breach of Contract

Plaintiff first alleges that defendant breached the contract entered into by the parties. (Compl. ¶¶ 17-20.) "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Squire v. Va. Hous. Dev. Auth., 758 S.E.2d 55, 60 (Va. 2014) (quoting Filak v. George, 594 S.E.2d 610, 614 (Va. 2004)) (internal quotation marks omitted).

Here, defendant had legally enforceable obligations to plaintiff pursuant to the Letter of Agreement signed by both

16

parties. (Compl. ¶ 17, Ex. 1; Johnson Decl. Ex. B.) Plaintiff
argues that defendant breached its obligations (1) by its slow
and unresponsive service, (2) by charging excessive shipping and
delivery costs and failing to coordinate shipments, (3) by
procuring furniture that was damaged, used, or not what was
ordered, and (4) by charging undisclosed and unauthorized
markups and design charges. (Br. Supp. Dams. 2; Johnson Decl. ¶
4.) Regarding the furniture that was damaged, used, or not what
was ordered, the language of the contract indicates that plans
and purchases were to be approved by plaintiff. For example, the
Agreement states that "[a]s selections are made, [defendant]
will provide [plaintiff] with detailed proposals and request
[plaintiff's] signed approval." (Compl. Ex. 1; Johnson Decl. Ex.
B.) Similarly, the Agreement states that defendant's services
will include "supervision for the purpose of ascertaining that
*approved* plans and specifications are complied with." (Compl.
Ex. 1; Johnson Decl. Ex. B) (emphasis added.) As such, furniture
that was damaged, used, or otherwise non-conforming, which in
each circumstance was not approved by plaintiff, represents a
breach of the obligation to only provide approved items.
Additionally, the Agreement states that defendant would be
compensated via an hourly billing rate, and the Agreement
further authorized a ten percent markup on shipping and related
services. (Johnson Decl. ¶¶ 8, 17, Ex. B; Compl. ¶ 10.) But the

17

Agreement did not provide for any other markups, commissions, or fees. Thus defendant's undisclosed markups on items procured for plaintiff are also a breach of the Agreement.

In contrast, though, the Agreement does not contain any language relating to the timetable for work to be performed, nor does it contain any provision addressing the budget for defendant's design charges. Similarly, the Agreement does not state that shipments will be consolidated or coordinated, and the undersigned does not find the shipping and delivery fees charged by defendant to be excessive. As such, these actions do not constitute breaches of defendant's obligations under the Agreement.

As to the element of damages, plaintiff was clearly injured when she paid for the damaged, used, or otherwise non-conforming furniture, in some cases also paying for the necessary repairs herself. (Johnson Decl. ¶ 11.) Similarly, plaintiff was clearly injured when she paid defendant amounts including the unauthorized markups. (Johnson Decl. ¶¶ 17-18; Pl. Supp. Exs.) Therefore, plaintiff has pled sufficient facts to state a claim for breach of contract by defendant as to the damaged, used, or otherwise non-conforming furniture and the unauthorized markups.

*2. Violation of the Virginia Consumer Protection Act of 1977*

Plaintiff's second cause of action is for violation of the Virginia Consumer Protection Act of 1977 ("VCPA"), Va. Code Ann.

§§ 59.1-196 et seq. (Compl. ¶¶ 23-27.) Any person who suffers loss as the result of a violation of the VCPA is entitled to bring suit to recover his/her damages. Va. Code Ann. § 59.1-204(A). As a preliminary issue, the VCPA applies to dealings between suppliers and the consuming public. Id. § 59.1-197. "Supplier" is defined as, *inter alia*, a seller, lessor or licensor who advertises, solicits or engages in consumer transactions. Id. § 59.1-198. "Consumer transaction" is defined to include the advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes. Id. In the instant case, defendant provided goods and services to plaintiff, in Virginia, in connection with a consumer transaction, namely the purchase of furniture for and the interior design of plaintiff's home. (Compl. ¶¶ 23-24; Johnson Decl. ¶ 3.) Therefore, defendant is subject to the VCPA.

Under the VCPA, prohibited acts include: (a) misrepresenting that goods or services have certain characteristics; (b) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; (c) offering for sale goods that are used, secondhand, repossessed, defective, blemished, deteriorated, or reconditioned without clearly identifying the goods as such; (d) offering goods or services with intent not to sell them at the price or upon the

19

terms offered; and (e) using deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. <u>See</u> Va. Code Ann. § 59.1-200(5)-(8), (14).

Here, plaintiff has pled that defendant committed each of the above violations. As to violations (a) and (b), defendant charged plaintiff for and provided to her a dining room table that was black, not brown as promised and dining room end chairs that were not reupholstered as agreed. (Johnson Decl. ¶ 11, Exs. C, I.) As to violation (c), defendant charged plaintiff for and provided to her a foyer cabinet that was used rather than new, and which also had a damaged drawer. (<u>Id.</u> at ¶ 11, Ex. E.) Similarly, plaintiff received and was charged for a damaged coffee table and the previously described dining room table was damaged with an indented scratch. (<u>Id.</u> at ¶ 11, Exs. C, J.) Finally, as to violations (d) and (e), defendant had undisclosed rebate and commission arrangements with its vendors and it charged plaintiff undisclosed markups for many of the furniture items procured. (<u>Id.</u> at ¶¶ 10, 17; Compl. ¶ 10.) For example, defendant charged plaintiff $4,800.00 for a chaise lounge that only cost defendant $2,481.00, and $11,000.00 for a breakfast table that only cost defendant $5,999.40. (Johnson Decl. ¶ 18, Exs. P-Q.) However, under the Agreement, defendant was only permitted to charge markups of ten percent for shipping and related services. (<u>Id.</u> at ¶¶ 8, 17, Ex. B.)

In this light, plaintiff has established a violation of the VCPA by defendant.

### 3. Trespass

Plaintiff's third and final claim is for trespass. (Compl. ¶¶ 30-33.)

> [I]n order to maintain a cause of action for trespass to land, the plaintiff must have had possession of the land, either actual or constructive, at the time the trespass was committed. In addition, . . . a plaintiff must prove an invasion that interfered with the right of exclusive possession of the land, and that was a direct result of some act committed by the defendant. Any physical entry upon the surface of the land constitutes such an invasion . . . .

Kurpiel v. Hicks, 731 S.E.2d 921, 925 (Va. 2012) (quoting Cooper v. Horn, 448 S.E.2d 403, 406 (Va. 1994)). In this case, plaintiff owns and has actual possession of the real property located at 909 Chinquapin Road, McLean, Virginia 22102. (Compl. ¶ 30.) Furthermore, plaintiff has pled that, on multiple occasions, agents of defendant – namely Robert Shields and his friend James – physically entered plaintiff's property and home without her permission and in contravention of the express denials of permission that plaintiff had communicated to defendant. (Johnson Decl. ¶¶ 19-20; Compl. ¶¶ 31-32.) Because a corporation acts through its agents, defendant is liable for the acts of its agents while they act within the scope of employment. See State Farm Fire & Cas. Co. v. Singh, CIVIL NO. 3:05CV834, 2006 U.S. Dist. LEXIS 33474, *16-17 (E.D. Va. May 25,

2006); *see also* Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985) ("As an inanimate entity, a corporation must act through agents.") During Mr. Shields's entries, he would take and leave items. (Johnson Decl. ¶ 19, Ex. A.) Such actions seem clearly to be within the scope of his employment with defendant to procure furniture for plaintiff's home and to perform interior design of the home. As such, plaintiff has sufficiently stated a claim of trespass against defendant.

### C. Requested Relief

*1. Damages*

Plaintiff first seeks damages for plaintiff's unlawful actions. (Compl. ¶ 34; Johnson Decl. ¶ 5.) For defendant's breach of contract, plaintiff is entitled to the damages that she incurred as a result of defendant's breaches. Plaintiff incurred damages of $46,263.00 relating to the damaged, used, or otherwise non-conforming furniture, for which defendant charged her. (Johnson Decl. ¶ 11, Exs. C-J; Br. Supp. Dams. 3.) Plaintiff also paid defendant a total of $24,506.50 in unauthorized and undisclosed markups.[4] (Johnson Decl. ¶¶ 17-18, Exs. P-Q; Pl. Supp. Exs.) Therefore, plaintiff is entitled to

---

[4] Plaintiff in her declaration and brief in support of damages calculates her damages regarding defendant's undisclosed markups by calculating the average markup and then applying this to the total amount of furnishings purchased, not including the damaged, used, or otherwise non-conforming furniture for which damages are already sought. (Johnson Decl. ¶ 18; Br. Supp. Dams. 2.) However, plaintiff cites no authority for calculating damages in this manner. As such, the undersigned has calculated plaintiff's damages based on the invoices and purchase orders provided, showing the amount in markups plaintiff paid for those items.

the total amount of $70,769.50 based on defendant's breaches of the Agreement.

Alternatively, under the VCPA, a person that suffers a loss due to a violation of the statute is entitled to recover her actual damages, or $500, whichever is greater. Va. Code Ann. § 59.1-204(A). As noted above, defendant violated the VCPA by providing plaintiff with and charging her for damaged, used, or otherwise non-conforming furniture that was not what plaintiff approved. As a result, plaintiff suffered a loss in the amount of $46,263.00. (Johnson Decl. ¶ 11; Br. Supp. Dams. 3.) In addition, defendant also violated the VCPA by charging plaintiff undisclosed markups on furniture procured, even though the Agreement stated that defendant would be compensated via an hourly billing rate and did not authorize any such markups. (Johnson Decl. ¶¶ 8, 17, Ex. B; Compl. ¶ 10.) As such, plaintiff suffered a loss in the amount of defendant's unauthorized markups, to which she is now entitled. Based on a review of all the purchase orders and invoices provided by plaintiff, defendant charged plaintiff markups in the amount of $24,506.50. (Johnson Decl. ¶¶ 17-18, Ex. P-Q; Pl. Supp. Exs.)

Plaintiff also requests treble damages under the VCPA for defendant's markups. That statute provides that, "[i]f the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual

23

damages sustained, or $1,000, whichever is greater." Va. Code Ann. § 59.1-204(A). Here, in light of the nature of defendant's violations (marking-up plaintiff's items without her knowledge or authorization) and defendant's refusal to provide cost documentation to plaintiff or her attorney upon their request, the Court finds that defendant's actions were clearly willful. As such, treble damages are appropriate. Thus, under the VCPA, defendant is liable to plaintiff for its unauthorized and undisclosed markups in the total amount of $73,519.50.

Plaintiff also seeks damages for her emotional distress and aggravation resulting from defendant's trespasses. (Br. Supp. Dams. 3; Johnson Decl. ¶¶ 5, 20; Compl. ¶¶ 33-34.) Plaintiff has stated that she was extremely shaken up by the various trespass incidents, most notably the episode in late April 2015 when Mr. Shields and another came into her home without authorization when she was alone and had just gotten out of the shower. (Johnson Decl. ¶ 20.) Plaintiff states that she now suffers lingering anxiety from those events, as she still thinks about hearing men in the house, particularly when she is alone, and she must frequently reassure herself that everything is alright when she hears noises in her house. (Id.) Consequently, plaintiff requests $10,000.00 in damages. (Id.)

Where the alleged trespass is deliberate and accompanied by aggravating circumstances, damages for emotional distress may be

recovered in the absence of physical injury. Johnson v. Marcel, 465 S.E.2d 815, 817 (Va. 1996). Here, defendant's trespass was clearly deliberate. (Johnson Decl. ¶¶ 19-20.) As such, whether plaintiff can recover damages for her emotional distress turns on whether there were aggravating circumstances. In Johnson v. Marcel, the Court found that the defendant's trespass, which was accompanied by her harassment of the plaintiffs, satisfied this standard. See 465 S.E.2d at 816-17 (describing the defendant's actions, including that she pulled the plaintiffs' telephone out of the wall, blocked the plaintiffs' driveway, and made excessive noise).

In this case, defendant's principal and agent Robert Shields, along with a friend named James, entered plaintiff's home without authorization on several occasions. (Johnson Decl. ¶ 19; Compl. ¶¶ 12, 32.) These intrusions were despite the numerous emails, text messages, and phone calls that plaintiff sent to Mr. Shields and defendant stating that no one was authorized to enter her home without her advance approval. (Johnson Decl. ¶ 19; Compl. ¶¶ 31-32.) Mr. Shields would then take and leave items without plaintiff's authorization. (Johnson Decl. ¶ 19, Ex. A.) Finally, the April 2015 trespass caught plaintiff in the upsetting position of being by herself, in her bathrobe, having just gotten out of her morning shower. (Id. at ¶ 20.) Therefore, the undersigned concludes that defendant's

actions amount to sufficiently aggravating circumstances to entitle plaintiff to the relatively modest amount requested of $10,000.00 for her emotional distress.

## 2. Attorneys' Fees and Costs

In addition to any damages awarded, a person who suffers loss due to a violation of the VCPA may also be awarded reasonable attorneys' fees and costs. Va. Code Ann. § 59.1-204(B). As noted above, defendant committed willful violations of the VCPA. Furthermore, plaintiff attempted to resolve this dispute with defendant and defendant's counsel prior to bringing this lawsuit, but defendant refused. (Johnson Decl. ¶ 21, Ex. A; Br. Supp. Dams. 3, 5.) Additionally, defendant has consistently failed to comply with the orders of this Court and has failed to participate in good faith in this case. Therefore, the undersigned concludes that an award of reasonable attorneys' fees and costs is appropriate in this case.

In support of her request for attorneys' fees and costs, plaintiff submitted the Declaration of Brian L. Behmer in Support of Plaintiffs' [sic] Proof of Damages and the Declaration of Arthur House in Support of Plaintiff's Proof of Damages, which both included itemized invoices describing the work performed and resulting fees and costs. (Dkts. 40 and 41.)

26

Plaintiff seeks $119,640.62 in attorneys' fees,[5] comprised of 172.7 hours by attorney Brian Behmer at a rate of $475.00 per hour,[6] 66.5 hours by attorney Arthur House at a rate of $510.00 per hour,[7] 20.7 hours by attorney Jessica Summers at a rate of $250.00 per hour, and 10.5 hours by law clerk Nancy Turner at a rate of $165.00 per hour. (Behmer Decl. ¶¶ 4-5, Ex. A; House Decl. ¶¶ 3-6, 8, Ex. A; Johnson Decl. ¶ 21, Ex. R; Br. Supp. Dams. 5.) Plaintiff further seeks $1,009.44 in costs and expenses.[8] (Johnson Decl. Ex. R; Behmer Decl. Ex. A; House Decl. Ex. A.) The undersigned has reviewed the declarations of Mr. Behmer and Mr. House and finds that these amounts are reasonable and necessary to enforce plaintiff's rights. Therefore, plaintiff will be awarded $119,640.62 in attorneys' fees and $1,009.44 in costs.

### 3. Pre-judgment Interest

Plaintiff further seeks pre-judgment interest on her damages. (Br. Supp. Dams. 5-6.) Pursuant to Va. Code Ann. §

---

[5] Because plaintiff did not include Paley Rothman's January 2016 services in her calculations, plaintiff requests $118,659.87 in attorneys' fees. (Johnson Decl. Ex. R.) However, based on the declarations of plaintiffs' attorneys and the invoices attached thereto, which include Paley Rothman's January 2016 services, the undersigned has determined that the correct amount of attorneys' fees is $119,640.62.

[6] Mr. Behmer did not charge for certain hours worked and applied a five percent discount on two occasions. Taking that into consideration, Mr. Behmer actually charged for approximately 167.4 hours at the above rate.

[7] Mr. House applied a five percent discount on one occasion, thus Mr. House actually charged for approximately 65.2 hours at the above rate.

[8] Because plaintiff's calculations do not include Paley Rothman's January 2016 costs, plaintiff requests $1,006.44 in costs. (Johnson Decl. Ex. R.) Based on the declarations of plaintiffs' attorneys and the invoices attached thereto, which include Paley Rothman's January 2016 costs, the undersigned has determined that the correct amount of costs is $1,009.44.

8.01-382, a trial court may award pre-judgment interest within its discretion. Upon a full review of this case, however, the undersigned determines that an award of pre-judgment interest is not appropriate. Moreover, under Virginia law, pre-judgment interest must be requested in a pleading before it can be awarded by a trial court. Devine v. Buki, 767 S.E.2d 459, 468 (Va. 2015). Here, although plaintiff mentions pre-judgment interest in paragraph 21 of her Complaint, plaintiff does not specifically ask for pre-judgment within her request for relief. (Compl. ¶ 34.) Therefore, plaintiff cannot now recover pre-judgment interest on her damages.

## IV. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge concludes that default judgment should be entered against defendant Robert Shields Interiors, Inc. as to plaintiff Tanya M. Johnson's Complaint in the total amount of $250,433.06, comprised of: $46,263.50 for defendant's breach of contract — or alternatively for defendant's violation of the VCPA — for providing plaintiff with and charging her for damaged, used, or otherwise non-conforming furniture; $73,519.50 for defendant's unauthorized and undisclosed markups in violation of the VCPA, including trebling under that statute for defendant's willful violations; $10,000.00 for plaintiff's emotional distress suffered due to defendant's willful trespasses; $119,640.62 in

28

attorneys' fees; and $1,009.44 in costs. The undersigned Magistrate Judge further concludes that the Counterclaim of defendant Robert Shields Interiors, Inc. should be dismissed with prejudice.

An appropriate order will issue.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

May 11, 2016
Alexandria, Virginia

29